339 F.3d 804
 STATE ENGINEER, OF the STATE OF NEVADA; Water Commissioners, of the Sixth Judicial District Court, Plaintiffs-Appellees,
v.
SOUTH FORK BAND OF the TE-MOAK TRIBE OF WESTERN SHO-SHONE INDIANS OF NEVADA; Marvin McDade, in his capacity as Chairman of the South Fork Band Council, Defendants, and
United States of America, as Trustee for the South Fork Band of the Te-Moak Tribe of Western Shoshone Indians of Nevada, Defendant-Appellant.
State Engineer, of the State of Nevada; Water Commissioners, of the Sixth Judicial District Court, Petitioners-Appellees,
Pershing County Water Conservation District, Petitioner-Intervenor-Appellee,
v.
South Fork Band of the Te-Moak Tribe of Western Shoshone Indians of Nevada; Marvin McDade, in his capacity as Chairman of the South Fork Band Council, Respondents-Appellants,
United States of America, as Trustee for the South Fork Band of the Te-Moak Tribe of Western Shoshone Indians of Nevada, Respondent-Appellee.
State Engineer, of the State of Nevada; Water Commissioners, of the Sixth Judicial District Court, Petitioners-Appellees,
Pershing County Water Conservation District, Petitioner-Intervenor-Appellee,
v.
South Fork Band of the Te-Moak Tribe of Western Shoshone Indians of Nevada; Marvin McDade, in his capacity as Chairman of the South Fork Band Council, Respondents, and
United States of America, as Trustee for the South Fork Band of the Te-Moak Tribe of Western Shoshone Indians of Nevada, Respondent-Appellant.
State Engineer, of the State of Nevada; Water Commissioners, of the Sixth Judicial District Court, Petitioners-Appellants, and
Pershing County Water Conservation District, Petitioner-Intervenor,
v.
South Fork Band of the Te-Moak Tribe of Western Shoshone Indians of Nevada; Marvin McDade, in his capacity as Chairman of the South Fork Band Council; United States of America, as Trustee for the South Fork Band of the Te-Moak Tribe of Western Shoshone Indians of Nevada, Respondents-Appellees.
 No. 00-17146.
 No. 00-17172.
 No. 00-17173.
 No. 00-17175.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted September 12, 2002.
 Filed July 28, 2003.
 
 COPYRIGHT MATERIAL OMITTED Raymond Rodriguez, Nevada Legal Services, Inc., Carson City, NV, for the South Fork Band of the Te-Moak Tribe of Western Shoshone Indians of Nevada.
 David C. Shilton, U.S. Department of Justice, Washington, DC, argued for the United States. John C. Cruden, Acting Assistant Attorney General, Environmental & Natural Resources Division, Patrick Barry and William B. Lazarus, U.S. Department of Justice, Washington, DC, joined him on the briefs.
 Paul G. Taggart, Deputy Attorney General, Carson City, NV, argued for the State Engineer of the State of Nevada.
 Frankie Sue Del Papa, Attorney General, Carson City, NV, joined him on the briefs.
 Laura A. Schroeder, Schroeder Law Offices, Portland, OR, for Pershing County Water Conservation District.
 Appeal from the United States District Court for the District of Nevada; Edward C. Reed, Jr., District Judge, Presiding. D.C. No. CV-99-00624-ECR(VPC).
 Before KOZINSKI and KLEINFELD, Circuit Judges, and BEISTLINE, District Judge.*
 KOZINSKI, Circuit Judge.
 
 
 1
 We consider whether a state court that has adjudicated a water decree retains exclusive jurisdiction over its administration.
 
 
 2
 * Like many Western states, Nevada follows a two-step process in determining and enforcing rights to the use of water in its river systems. First is the adjudication phase. The state engineer makes an initial determination of the relative usufructuary rights to water among different claimants and files an order with the state district court having jurisdiction over the geographic region. Nev.Rev.Stat. §§ 533.090, 533.160. After holding a hearing, the court enters a decree either affirming or modifying the engineer's order. Id. § 533.185. Barring later modifications, the judicial decree defining the distribution of water rights is "final" and "conclusive upon all persons and rights lawfully embraced within [it]." Id. § 533.210(1).
 
 
 3
 Next comes the administration phase, where the state engineer and water commissioners give practical effect to the judicial decree and distribute water rights as "officers of the court." Id. § 533.220(1). To carry out their official duties, water commissioners have the "right of ingress and egress across and upon public, private or corporate lands at all times." Id. § 533.305(3). Moreover, to help defray the costs of operating the stream system and to pay water commissioners' salaries, the county assessor is authorized to collect special assessments from water claimants. Id. § 533.285. "Any person feeling himself aggrieved by any order or decision of the state engineer ... or the water commissioner... may have the same reviewed by a proceeding for that purpose.... [O]n stream systems where a decree of court has been entered, the action shall be initiated in the court that entered the decree." Id. § 533.450(1). Similarly, the state engineer "may petition the district court having jurisdiction of the matter ... and cause to be issued ... an order to show cause why the order and decision should not be complied with." Id. § 533.220(2). Violations of the court's decree amount to contempt of court, punishable by fine, imprisonment or both under state law. See id. § 22.100.
 
 
 4
 Nevada's Sixth Judicial District Court completed an adjudication of the Humboldt River and its tributaries nearly seventy years ago and entered a final decree defining various claimants' rights to the use of water in the stream system. The Humboldt Decree encompassed five ranches that were later purchased by the federal government to create an Indian reservation for the South Fork Band of the Te-Moak Tribe of Western Shoshone Indians. Although the tribe is the beneficial user of the ranches, the federal government remains the fee owner. The deeds to the ranches specifically refer to the Humboldt Decree, stating that all water rights run with the land. Under both Nevada law and the deeds, the Decree defines "the basis, the measure and the limit of the right to the use of water" by the Indian tribe. Id. § 533.035.
 
 
 5
 Until the dispute that gave rise to this litigation, the federal government paid the state-levied assessments on behalf of the tribe, and the tribe allowed the state water commissioner onto the reservation to ensure that all beneficiaries of the Humboldt Decree were receiving their share of water. Troubles began, however, when the federal money dried up. For a while, the tribe agreed to pay its own way — but not for long. Soon it passed resolutions challenging the state's authority to regulate the river on its reservation. When a state water commissioner entered the reservation in the course of his duties, the tribe handcuffed him and charged him with trespass.
 
 
 6
 After failing to persuade the tribe to rescind its resolutions and allow the water commissioner access, Nevada began contempt proceedings against the tribe for violating the Humboldt Decree. The United States was soon joined as a necessary party, and it removed the action to federal court under 28 U.S.C. § 1442. The case quickly took on a surreal quality, as the state and federal courts enjoined each other from conducting further proceedings. The logjam was finally broken when the federal district court held that, although it had concurrent jurisdiction over the contempt action, it would abstain under Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and remanded the case to state court. All parties appealed. The United States and the tribe challenge the district court's abstention ruling. Nevada argues that the district court should have dismissed the case outright for want of jurisdiction.
 
 II
 
 7
 Although the district court's order does not "end[ ] the litigation on the merits and leave[ ] nothing for the court to do but execute the judgment," Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945), it put the litigants "effectively out of court," Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 714, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (internal quotation marks omitted), and the district court "retain[ed] nothing of the matter on the federal court's docket," id. Accordingly, we have appellate jurisdiction to review the remand order under 28 U.S.C. § 1291. Id. at 713, 116 S.Ct. 1712; Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 8-13, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).
 
 
 8
 We review de novo the district court's conclusion that it had subject matter jurisdiction. Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 990 (9th Cir.1994). If the district court lacked subject-matter jurisdiction, we can correct the jurisdictional error, but cannot entertain the merits of the appeal. Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam). Nevada's attempts to preclude the exercise of federal jurisdiction, see, e.g., Nev.Rev.Stat. § 533.450(1); State v. Sustacha, 108 Nev. 223, 826 P.2d 959, 961 (1992) (per curiam) ("[L]itigation concerning Humboldt Stream System water rights should be carried out and resolved only in the Sixth Judicial District Court." (emphasis added)), are not binding on us, as "the jurisdiction of the [federal] court ... is not subject to State limitation." Ry. Co. v. Whitton's Adm'r, 80 U.S. (13 Wall.) 270, 286, 20 L.Ed. 571 (1871).
 
 III
 
 9
 We begin our jurisdictional inquiry with 28 U.S.C. § 1442(a)(1), the federal removal statute on which the United States places heavy reliance. The relevant part reads:
 
 
 10
 A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office....
 
 
 11
 28 U.S.C. § 1442(a)(1).
 
 
 12
 Section 1442, however, doesn't resolve the jurisdictional issue. The statute merely allows the federal government to remove a case to federal district court; it does not determine whether the court has jurisdiction to hear it. See id. § 1447(c); Nebraska ex rel. Dep't of Soc. Servs. v. Bentson, 146 F.3d 676, 679 (9th Cir.1998) ("A defendant's power to remove a case to federal court is independent of the federal court's power to hear it. These are analytically distinct inquiries and should not be confused. Once a case is properly removed, a district court has the authority to decide whether it has subject matter jurisdiction over the claims.").
 
 
 13
 To be sure, section 1442, unlike section 1441, "is not keyed to the original jurisdiction of the federal district court," Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co., 644 F.2d 1310, 1314 (9th Cir.1981), and, hence, allows the removal of proceedings from state to federal court even if the action could not have been commenced in the federal forum, Willingham v. Morgan, 395 U.S. 402, 406, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). But section 1442 is not a trump. If there are specific jurisdictional bars elsewhere that prevent the district court from asserting jurisdiction, the general removal provision cannot overcome the jurisdictional defect. See, e.g., California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States, 215 F.3d 1005, 1010-15 (9th Cir. 2000) (holding that 28 U.S.C. § 1442 could not support jurisdiction in the face of a jurisdictional bar, on the ground that "[i]t is fundamental that a general statutory provision may not be used to nullify or to trump a specific provision, irrespective of the priority of enactment"). We must therefore examine whether there are such jurisdictional obstacles.
 
 IV
 
 14
 The most obvious jurisdictional hurdle is the "ancient and oft-repeated ... doctrine of prior exclusive jurisdiction — that when a court of competent jurisdiction has obtained possession, custody, or control of particular property, that possession may not be disturbed by any other court." 14 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3631, at 8 (3d ed.1998). This principle was definitively incorporated into American law long ago:
 
 
 15
 The Federal and state courts exercise jurisdiction within the same territory, derived from and controlled by separate and distinct authority, and are therefore required, upon every principle of justice and propriety, to respect the jurisdiction once acquired over property by a court of the other sovereignty. If a court of competent jurisdiction, Federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, such property is withdrawn from the jurisdiction of the courts of the other authority as effectually as if the property had been entirely removed to the territory of another sovereignty.
 
 
 16
 Palmer v. Texas, 212 U.S. 118, 125, 29 S.Ct. 230, 53 L.Ed. 435 (1909) (emphasis added); see also Kline v. Burke Constr. Co., 260 U.S. 226, 229-30, 43 S.Ct. 79, 67 L.Ed. 226 (1922).
 
 
 17
 Although the doctrine "is based at least in part on considerations of comity," 14 Federal Practice and Procedure § 3631, at 12, and prudential policies of avoiding piecemeal litigation, see, e.g., Colorado River, 424 U.S. at 819, 96 S.Ct. 1236, it is no mere discretionary abstention rule. Rather, it is a mandatory jurisdictional limitation. Palmer, 212 U.S. at 125, 29 S.Ct. 230; Hagan v. Lucas, 35 U.S. (10 Pet.) 400, 403, 9 L.Ed. 470 (1836) ("[P]roperty could not be subject to two jurisdictions at the same time. The first levy, whether it were made under the federal or state authority, withdraws the property from the reach of the process of the other." (emphasis added)).
 
 
 18
 We have applied the doctrine of prior exclusive jurisdiction in the water rights context. In United States v. Alpine Land & Reservoir Co., 174 F.3d 1007 (9th Cir. 1999), the federal district court for the district of Nevada had entered final decrees adjudicating the water rights of all users in the Truckee River and Carson River basins. The U.S. Fish and Wildlife Service later sought to change the place and manner of use of the water rights it had purchased and that had been adjudicated under the water decrees. As it was required to do, the Service petitioned the state engineer for an adjustment. Over Churchill County's objections, the state engineer granted the application. Instead of appealing the engineer's decision to the federal district court that had approved the original decrees, the county filed an appeal in state court. At the request of the state engineer and the United States, the federal district court enjoined further state court proceedings. On appeal, we affirmed the injunction and held that, because the federal district court was the court that had entered the original decrees, it maintained exclusive jurisdiction over their administration. Id. at 1012-14.
 
 
 19
 The only difference between this case and Alpine is that the shoe is now on the other foot. The court that entered the decree here was a Nevada court, and the court that was about to interfere with its administration is a federal district court. Despite the federal government's inconsistent litigation positions in the two cases, the legal principles are identical. Kline held as much:
 
 
 20
 Where the action is in rem the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached. The converse of the rule is equally true, that where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction.
 
 
 21
 260 U.S. at 229, 43 S.Ct. 79 (emphasis added).
 
 
 22
 The tribe and the federal government try to escape this inexorable jurisdictional bar by emphasizing that contempt actions are in personam rather than in rem. But Alpine, like this case, was not styled as an in rem action, yet the formalistic distinction made not the least bit difference. Lest we "exalt form over necessity," Montgomery Ward & Co. v. FTC, 691 F.2d 1322, 1328 (9th Cir.1982), we look behind "the form of the action" to "the gravamen of a complaint and the nature of the right sued on," Davis & Cox v. Summa Corp., 751 F.2d 1507, 1520 (9th Cir.1985), superseded by statute on other grounds as stated in Northrop Corp. v. Triad Int'l Mktg. S.A., 842 F.2d 1154 (9th Cir.1988) (per curiam). There can be no serious dispute that the contempt action was brought to enforce a decree over a res — i.e., the Humboldt River. Given the zero-sum nature of the resource, any party's unlawful diversion of water from the stream necessarily affects other users. This inescapable fact is, after all, the motivating force behind Nevada's comprehensive system for adjudicating water rights in the first place. See Nev.Rev.Stat. § 533.090.
 
 
 23
 Because this is not a case where the court hearing the second suit can adjudicate personal claims to property without disturbing the first court's jurisdiction over the res, see Kline, 260 U.S. at 230, 43 S.Ct. 79, the contempt proceeding cannot be termed "strictly in personam," Penn. Gen. Cas. Co. v. Pennsylvania ex rel. Schnader, 294 U.S. 189, 195, 55 S.Ct. 386, 79 L.Ed. 850 (1935) (emphasis altered). To be sure, the contempt action does not "determine interests in specific property as against the whole world" and is brought only "against the defendant[s] personally," Black's Law Dictionary 1245 (6th ed. 1990). But "it is the [parties'] interest[s] in the property that serve[ ] as the basis of the jurisdiction." Id. Therefore, the action is quasi in rem, id., and the doctrine of prior exclusive jurisdiction fully applies, see United States v. Bank of N.Y. & Trust Co., 296 U.S. 463, 477, 56 S.Ct. 343, 80 L.Ed. 331 (1936); 14 Federal Practice and Procedure § 3631, at 8-11.
 
 V
 
 24
 Notwithstanding this well-established principle, the federal government argues that Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), gives state and federal courts concurrent jurisdiction over water rights disputes. Colorado River involved an interpretation of the McCarran Amendment, 43 U.S.C. § 666(a), which reads as follows:
 
 
 25
 Consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: Provided, That no judgment for costs shall be entered against the United States in any such suit.
 
 
 26
 43 U.S.C. § 666(a).
 
 
 27
 A. Before we delve into the statute itself, we must first decide whether the McCarran Amendment applies to the Humboldt Decree. The Decree was entered in 1935, but the Amendment was not enacted until 1952. Although Congress is empowered to enact statutes with retrospective effect, we will not apply a statute retroactively unless it "take[s] away no substantive right" and does not "alter liability under the applicable substantive law," Altmann v. Republic of Austria, 317 F.3d 954, 963-64 (9th Cir.2002) (internal quotation marks omitted); see Landgraf v. USI Film Prods., 511 U.S. 244, 273-75, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), or unless we can discern "a clear indication from Congress that it intended such a result," INS v. St. Cyr, 533 U.S. 289, 316, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).
 
 
 28
 The Amendment satisfies both criteria. First, statutes that waive the United States's sovereign immunity do not implicate the concerns of "fair notice, reasonable reliance, and settled expectations" that undergird the usual presumption against retroactive application. Landgraf, 511 U.S. at 270, 114 S.Ct. 1483. In contrast to laws that spell out rules of conduct by which citizens' behavior will be judged, a waiver of immunity only applies to the sovereign. In the former case, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." Id. at 265, 114 S.Ct. 1483. These considerations are inapplicable in the latter case. Because the McCarran Amendment, like the Foreign Sovereign Immunities Act (FSIA), "did not alter liability under the applicable substantive law," it would not be "impermissibly retroactive" to apply the Amendment to the Decree. Altmann, 317 F.3d at 964. Absent any retroactivity bar, we have an obligation to "apply the law in effect at the time [we] render[ ] [our] decision." Bradley v. Sch. Bd. of the City of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).
 
 
 29
 In any event, there are sufficient indications from Congress that the Amendment should be applied retrospectively. The language of the statute may leave room for greater clarity, but its use of the present tense and its reference to the United States as a current owner of water rights — "Consent is hereby given ... where it appears that the United States is the owner of ... water rights," 43 U.S.C. § 666(a) (emphasis added) — manifest the requisite intent no less clearly than Congress's use of the word "henceforth" in waiving immunity under FSIA, which has been held sufficient to overcome the non-retroactivity presumption. See Altmann, 317 F.3d at 963(discussing, but reserving opinion on, the textual argument in Princz v. Federal Republic of Germany, 26 F.3d 1166, 1170 (D.C.Cir.1994), that "Congress's intention for the FSIA to be retroactively applied was manifest in the statute's statement of purpose that `claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States....'" (quoting 28 U.S.C. § 1602) (emphasis added)).[1]
 
 
 30
 We hold that the McCarran Amendment waives the United States's immunity from suit, not only for the administration of water rights acquired after the statute's enactment, but also for the administration of water rights acquired before the law came into effect. Hence, even though the Humboldt Decree predates the Amendment by nearly two decades, the Amendment governs this case.
 
 
 31
 B. We next examine what effects, if any, the McCarran Amendment has on the doctrine of prior exclusive jurisdiction. We can quickly reject the United States's argument that Colorado River supplies a ready answer. Colorado River held that the McCarran Amendment does not diminish federal district court jurisdiction and that "[t]here is no irreconcilability in the existence of concurrent state and federal jurisdiction." 424 U.S. at 808-09, 96 S.Ct. 1236. But the questions presented in Colorado River only "concern[ed] the effect of the McCarran Amendment upon the jurisdiction of the federal district courts ... over suits for determination of water rights brought by the United States." Id. at 803, 96 S.Ct. 1236 (emphasis added). That is a question of adjudication. In contrast, the question here is one of administration.
 
 
 32
 Colorado River stands for the unremarkable proposition that, before a res has been seized, both federal and state courts enjoy concurrent jurisdiction and may commence proceedings to decide questions about the allocation of water rights. But jurisdiction is only the "power of the court to decide a matter." Black's Law Dictionary 853 (6th ed.1990) (emphasis added). The mere fact that state and federal courts are initially vested with coequal authority does not mean that more than one court can actually adjudicate — much less administer — decrees over the same res. See, e.g., Penn. Gen. Cas. Co., 294 U.S. at 196, 55 S.Ct. 386("Where the assertion of jurisdiction by the two courts is nearly simultaneous, it becomes important... to determine the precise time when the jurisdiction attaches.... [T]hat one whose jurisdiction and process are first invoked ... is treated as in constructive possession of the property, and as authorized to proceed with the cause.").
 
 
 33
 Colorado River is thus entirely consistent with the doctrine of prior exclusive jurisdiction. The doctrine is only triggered after a court has acquired jurisdiction over the res. These are precisely the circumstances we confront. Unlike the situation in Colorado River, adjudication proceedings had commenced in state court long ago, and a final decree was entered decades earlier. Because Colorado River is inapposite, we must take a fresh look at the statute ourselves.
 
 
 34
 C. The United States is correct that the McCarran Amendment does not explicitly spell out whether state and federal courts have concurrent or exclusive jurisdiction over the administration of water rights decrees. The Amendment states only that the federal government waives the defense of sovereign immunity and submits itself like any ordinary defendant to "the court having jurisdiction." 43 U.S.C. § 666(a). But this observation actually undercuts the federal government's argument that the Amendment repudiated the doctrine of prior exclusive jurisdiction.
 
 
 35
 It is axiomatic that statutes are presumed not to disturb the common law, "unless the language of a statute be clear and explicit for this purpose." Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co. of Va., 464 U.S. 30, 35-36, 104 S.Ct. 304, 78 L.Ed.2d 29 (1983) (internal quotation marks omitted). Because the doctrine of prior exclusive jurisdiction "predates [even] our dual federal-state court system," 14 Federal Practice and Procedure § 3631, at 15, we must presume that, when Congress used the phrase "the court having jurisdiction" in discussing the administration of a decree over a res, it knew and adopted "the cluster of ideas that were attached" to those words, Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952), including mandatory limitations on the exercise of a court's jurisdiction. Absent clearer indications, we cannot impute to Congress an intent to repeal, sub silentio, this deeply-rooted legal principle. We therefore reject any suggestion that the McCarran Amendment repealed the doctrine of prior exclusive jurisdiction and hold, instead, that the Amendment affirmed that longstanding jurisdictional limitation.[2]
 
 VI
 
 36
 We affirm the district court's order remanding the case to state court, but on the ground that the court lacked jurisdiction, not as a matter of abstention. Because we have appellate jurisdiction only to correct the district court's erroneous jurisdictional holding, we express no view on any other issue.
 
 
 37
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Ralph R. Beistline, United States District Judge for the District of Alaska, sitting by designation
 
 
 [1]
 Indeed, a contrary reading of the Amendment would be completely at odds with the evils the law is designed to combat. The Committee Report explicitly sets forth the goals Congress had in mind, so it's worth quoting at some length:
 It is apparent that if any water user claiming to hold [water] right[s] by reason of the ownership thereof by the United States or any of its departments is permitted to claim immunity from suit in, or orders of, a State court, such claims could materially interfere with the lawful and equitable use of water for beneficial use by the other water users who are amenable to and bound by the decrees and orders of the State courts. Unless Congress has removed such immunity by statutory enactment, the bar of immunity from suit still remains and any judgment or decree of the State court is ineffective as to the water right held by the United States.... The bill (S.18) was introduced for the very purpose of correcting this situation and the evils growing out of such immunity.
 ... If a water user possessing a decreed water right is immune from suits and proceedings in the courts for the enforcement of valid decrees, then the years of building the water laws of the Western States in the earnest endeavor of their proponents to effect honest, fair and equitable division of the public waters will be seriously jeopardized.
 ....
 The committee is aware of the fact, as shown by the hearings, that the United States Government has acquired many lands and water rights in the States that have the doctrine of prior appropriation. When these lands and water rights were acquired from the individuals the Government obtained no better rights than had the persons from whom the rights were obtained.
 Since it is clear that the States have the control of the water within their boundaries, it is essential that each and every owner along a given water course, including the United States, must be amenable to the law of the State, if there is to be a proper administration of the water law as it has developed over the years.
 S.Rep. No. 82-755, at 5-6 (1951) (emphasis added). That the Report refers to water rights previously acquired by the United States in discussing the reason for waiving immunity suggests that Congress intended to apply the law retroactively.
 
 
 [2]
 We note that what little legislative history exists on this issue supports our conclusion. Although earlier drafts of the McCarran Amendment provided "[t]hat the United States shall have the right of removal to the Federal court of any such suit in which it is a party," this language was specifically stricken from the final version of the law after attention was called to itSee 82 Cong. Rec. 7817 (1952). A new proviso incorporating the phrase, "the court having jurisdiction," was inserted in place of the deleted language.