**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: KLAMATH IRRIGATION
DISTRICT,

KLAMATH IRRIGATION
DISTRICT,
       *Petitioner,*

  v.

UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
OREGON, MEDFORD,
       *Respondent,*

U.S. BUREAU OF RECLAMATION;
OREGON WATER RESOURCES
DEPARTMENT,
       *Real Parties in Interest.*

No. 22-70143

D.C. No.
1:21-cv-00504-
AA

OPINION

Petition for a Writ of Mandamus

Argued and Submitted November 18, 2022
San Francisco, California

Filed June 5, 2023

Before:  Richard R. Clifton and Bridget S. Bade, Circuit
Judges, and M. Miller Baker,[*] Judge.

Opinion by Judge Clifton;
Dissent by Judge Baker

## SUMMARY[**]

### Mandamus / Water Rights

The panel denied a petition for writ of mandamus brought by Klamath Irrigation District ("KID") to compel the district court to remand KID's motion for a preliminary injunction to the Klamath County Circuit Court in Oregon in a case involving a dispute over the allocation of water within the Klamath Basin.

In 1975, Oregon began the Klamath Basin Adjudication ("KBA"), a general stream adjudication comprising both administrative and judicial phases. During the administrative phase, the Oregon Water Resources Department determined claims to water rights in Upper Klamath Lake and portions of the Klamath River within Oregon. Nearly forty years later, the Oregon Water Resources Department entered an Amended and Corrected Findings of Fact and Final Order of Determination ("ACFFOD"), which provisionally recognized the

---

[*] The Honorable M. Miller Baker, Judge for the United States Court of International Trade, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

determined claims, in the Klamath County Circuit Court for confirmation. The Yurok and the Hoopa Valley Tribes of California (the "Tribes") did not participate in the KBA, but the Federal Circuit in related litigation concluded that their rights were protected even though they were not adjudicated.

In 2021, KID filed a motion for a preliminary injunction in state court seeking to stop the Bureau of Reclamation from releasing water from Upper Klamath Lake in accordance with its Endangered Species Act ("ESA") responsibilities and the Tribes' rights. Reclamation removed the case to federal district court under the federal officer removal statute, and KID moved to remand. The district court declined to remand, reasoning that the McCarran Amendment's waiver of sovereign immunity did not apply because KID's motion for a preliminary injunction did not seek to adjudicate or administer ACFFOD rights; rather, it sought to re-litigate federal issues—namely, Reclamation's authority to release water in compliance with the ESA and tribal rights.

The panel considered the five factors in *Bauman v. U.S. District Court*, 557 F.3d 813, 817 (9th Cir. 2004), in determining whether mandamus was warranted. The panel began with the third factor—clear error as a matter of law—because it was a necessary condition for granting the writ of mandamus. KID alleged that the district court's remand denial was clearly erroneous under the doctrine of prior exclusive jurisdiction, which provides that when a court is exercising *in rem*, or *quasi in rem*, jurisdiction over a *res*, a second court will not assume *in rem*, or *quasi in rem*, jurisdiction over the same *res*. The panel held that the doctrine of prior exclusive jurisdiction did not apply here. The KBA did not adjudicate Reclamation's ESA obligations or the Tribes' senior rights, so the Klamath

County Circuit Court did not have jurisdiction over the rights challenged by KID's motion. The panel held that KID's other assertion—that the Klamath County Circuit Court had prior exclusive jurisdiction because its motion seeks to enforce rights determined in the ACFFOD—was undermined by *Klamath Irrigation District v. U.S. Bureau of Reclamation (KID II)*, 48 F.4th 934 (9th Cir. 2022). The panel rejected KID's attempt to circumvent *KID II,* the Tribes' rights, and the effect of the ESA by characterizing the relief it sought as an application of the ACFFOD. The panel expressed no views on the merits of KID's underlying motion for preliminary injunction, and concluded only that the district court did not err in declining to remand the motion for preliminary injunction to the state court.

The panel held that it need not consider the remaining *Bauman* factors because the third factor was dispositive, but that KID's petition did not satisfy them in any event.

Dissenting, Judge Baker wrote that the mandamus petition filed by KID presented an important question involving jurisdictional first principles: Does a comprehensive state court *in rem* water-rights proceeding have prior exclusive jurisdiction over a *quasi in rem* motion to enforce a decree governing rights to *in-state* water when the Bureau of Reclamation asserts defenses based on the reserved rights of *out-of-state* Indian tribes and the preemptive effect of ESA? He would hold that because the Klamath County Circuit Court had prior exclusive jurisdiction over the order that KID's motion sought to enforce, the district court necessarily committed a clear error of law in failing to remand. He would grant the mandamus petition and send KID's motion back to state court.

**COUNSEL**

Nathan R. Rietmann (argued), Rietmann Law P.C., Salem, Oregon; John P. Kinsey and Christopher A. Lisieski, Wanger Jones Helsley P.C., Fresno, California; for Petitioner.

John L. Smeltzer (argued), Thomas K. Snodgrass, Robert P. Williams, and William B. Lazarus, Attorneys; Todd Kim, Assistant Attorney General; Environment and Natural Resources Division, United States Department of Justice; Washington, D.C.; Michael Gheleta, Supervising Attorney; Office of the Solicitor, United States Department of the Interior; Washington, D.C.; for Real Party in Interest United States Bureau of Reclamation.

Denise G. Fjordbeck and Nichole DeFever, Assistant Attorneys General; Benjamin Gutman, Solicitor General; Ellen F. Rosenblum, Attorney General of Oregon; Office of the Oregon Attorney General; Salem, Oregon; Real Party in Interest Oregon Water Resources Department.

# OPINION

CLIFTON, Circuit Judge:

Disputes over the allocation of water within the Klamath Basin in southern Oregon and northern California, particularly during the recent period of severe and prolonged drought, have prompted many lawsuits in this and other courts. In this episode, Klamath Irrigation District ("KID") petitions for a writ of mandamus to compel the district court to remand KID's motion for preliminary injunction to the Klamath County Circuit Court in Oregon. The motion had originally been filed by KID in that Oregon court but was removed to federal district court by the U.S. Bureau of Reclamation ("Reclamation"), a federal agency within the U.S. Department of Interior. Reclamation was identified by KID as the respondent for KID's motion.

A requirement for obtaining mandamus relief is a determination by us that the district court's order was clearly erroneous as a matter of law. We conclude that the district court's order was not clearly erroneous. As a result, we deny the petition and decline to issue the writ.

## I.      Background

### A.      The Klamath Basin and Klamath Project

The Klamath Basin encompasses approximately 12,000 square miles of "interconnected rivers, canals, lakes, marshes, dams, diversions, wildlife refuges, and wilderness areas" in southern Oregon and northern California. *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation* (*KID II*), 48 F.4th 934, 938 (9th Cir. 2022). Upper Klamath Lake is a large freshwater lake in the Klamath Basin in Oregon that drains into the Link River. *Klamath Irrigation Dist. v. Or.*

*Water Res. Dep't* (*Or. Water Res. Dep't*), 518 P.3d 970, 973 (Or. Ct. App. 2022).   From there, water flows into and through Lake Ewauna to the Klamath River, which then proceeds southwest into California and eventually joins the Trinity River near the Pacific coast.

Since time immemorial, Indigenous Peoples, including the Yurok and the Hoopa Valley Tribes of California (the "Tribes"), have depended upon the waters of the Klamath Basin and the traditional fisheries therein.  *Id.*; *see also KID II*, 48 F.4th at 939–40 (citing *United States v. Adair*, 723 F.2d 1394, 1414 (9th Cir. 1983); *Parravano v. Babbitt*, 70 F.3d 539, 541–43 (9th Cir. 1995)); *Baley v. United States*, 942 F.3d 1312, 1321–22 (Fed. Cir. 2019), *cert. denied*, 141 S. Ct. 133 (2020).

Pursuant to the Reclamation Act of 1902, 43 U.S.C. §§ 371–390h, Reclamation operates the Klamath River Basin Project (the "Klamath Project"), a series of complex irrigation works in the region, in accordance with state[1] and federal law, except where state law conflicts with superseding federal law.  43 U.S.C. § 383; *KID II*, 48 F. 4th

---

[1] Both Oregon and California follow the doctrine of prior appropriation. *See Irwin v. Phillips*, 5 Cal. 140, 146 (1855) (California); *Teel Irrigation Dist. v. Or. Water Res. Dep't*, 919 P.2d 1172, 1174 (Or. 1996) (Oregon). The doctrine provides that water rights are "perfected and enforced in order of seniority, starting with the first person to divert water from a natural stream and apply it to a beneficial use (or to begin such a project, if diligently completed)." *Montana v. Wyoming*, 563 U.S. 368, 375–76 (2011) (citing *Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 98 (1938); *Arizona v. California*, 298 U.S. 558, 565–66 (1936); Wyo. Const. art. 8, § 3).  "Once such a water right is perfected, it is senior to any later appropriators' rights and may be fulfilled entirely before those junior appropriators get any water at all."  *Id.* at 376.

at 940–41. In doing so, Reclamation balances various interests, three of which are relevant to the instant motion.

First, under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544, Reclamation must maintain specific water levels in Upper Klamath Lake and instream flows in the Klamath River. *KID II*, 48 F.4th at 940–41; *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1213 (9th Cir. 1999), *cert. denied*, 531 U.S. 812 (2000); *Yurok Tribe v. U.S. Bureau of Reclamation*, No. 19-cv-04405-WHO, 2023 WL 1785278, at *5–6 (N.D. Cal. Feb. 6, 2023); *Baley*, 942 F.3d at 1323–25 (explaining the obligations).

Second, the Tribes' senior, non-consumptive rights compel Reclamation to maintain specific instream flows in the Klamath-Trinity River in California. *Patterson*, 204 F.3d at 1213–14; *KID II*, 48 F.4th at 941. The river and its fisheries are integral to the Tribes' existence. *E.g.*, *KID II*, 48 F.4th at 940 (citing *Parravano*, 70 F.3d at 542); *Yurok Tribe*, 2023 WL 1785278, at *6. Indeed, "one of the central purposes" behind the establishment of the Tribes' reservations was protecting the traditional fisheries. *KID II*, 48 F.4th at 940 (citing *Parravano*, 70 F.3d at 542, 546); *see also* S. Rep. No. 100-564, at 14–15 (1988). "At the bare minimum," the Tribes hold rights to an amount of water that is at least equal, but not limited to, the amount necessary to fulfill Reclamation's ESA responsibilities. *Baley*, 942 F.3d at 1336–37; *Yurok Tribe*, 2023 WL 1785278, at *6; *Or. Water Res. Dep't*, 518 P.3d at 973–974.

Finally, Reclamation also contracts with KID, a quasi-municipal Oregon irrigation district, to supply water "subject to [its] availability" to KID's irrigators. *KID II*, 48 F.4th at 940 (citation omitted); *Or. Water Res. Dep't*, 518

P.3d at 972. Delayed access to or decreased amounts of water cause "long-reaching damages" to the irrigators' businesses.

KID and other irrigation districts in the region are members of the Klamath Water Users Association ("KWUA"), a non-profit organization that represents irrigation districts within the Klamath Project. *See Klamath Irrigation Dist. v. United States*, 75 Fed. Cl. 677, 687 (2007), *vacated on other grounds*, 635 F.3d 505 (Fed. Cir. 2011); *see also Member Districts*, Klamath Water Users Ass'n, https://kwua.org/member-districts/ (last visited March 17, 2023).

### B.     The Klamath Basin Adjudication

In 1909, Oregon enacted the Water Rights Act, Or. Rev. Stat. ch. 537, which provided that all waters of the state belong to the public and rights existing before the Act's effective date must be determined. In 1975, Oregon began the Klamath Basin Adjudication ("KBA"), a general stream adjudication comprising both administrative and judicial phases. *Baley*, 942 F.3d at 1321. During the lengthy administrative phase, the Oregon Water Resources Department ("OWRD") determined claims to water rights in Upper Klamath Lake and portions of the Klamath River within Oregon. *Or. Water Res. Dep't*, 518 P.3d at 973. Nearly forty years later, the agency entered an Amended and Corrected Findings of Fact and Final Order of Determination ("ACFFOD"), which provisionally recognized the determined claims, in the Klamath County Circuit Court for confirmation. *Id.* While the judicial phase of the KBA is pending, the ACFFOD rights are enforceable. *See* Or. Rev. Stat. §§ 539.130, 539.170.

The Tribes did not participate in the KBA, but the Federal Circuit concluded in related litigation that their rights are protected even though they were not adjudicated because "there is no need for a state adjudication to occur before federal reserved rights are recognized[.]" *Baley*, 942 F.3d at 1340–41 (citing *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 849 F.3d 1262, 1272 (9th Cir. 2017)). Under the ACFFOD, Reclamation has the right to store water in Upper Klamath Lake, and KID has the right to use a specific amount of water for irrigation. However, KID's rights are subservient to the Tribes' rights and Reclamation's ESA responsibilities. *Patterson*, 204 F.3d at 1213 (the Tribes' senior rights "carry a priority date of time immemorial"); *Baley*, 942 F.3d at 1340 (quoting *Agua Caliente Band*, 849 F.3d at 1272) ("[S]tate water rights are preempted by federal reserved rights."). Because "Reclamation cannot distribute water that it does not have[,]" water may not be available to KID, "for example, due to drought, a need to forego diversions to satisfy prior existing rights, or compliance with other federal laws such as the Endangered Species Act." *KID II*, 48 F.4th at 940 (citation omitted).

## C.    The Present Dispute

A severe, prolonged drought has reduced the amount of water available in southern Oregon and northern California, saddling Reclamation with the "'nearly impossible' task of balancing multiple competing interests in the Klamath Basin." *Id.* at 938–40 (quoting *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation* (*KID I*), 489 F. Supp. 3d 1168, 1173 (D. Or. 2020)). In several federal lawsuits, KID and similarly situated parties have repeatedly and unsuccessfully challenged Reclamation's authority to release water to satisfy tribal rights and comply with the ESA. *See, e.g.*, *KID*

*I*, 489 F. Supp. 3d 1168, *aff'd*, *KID II*, 48 F.4th 934; *Patterson*, 204 F.3d 1206; *Baley*, 942 F.3d 1312; *Yurok Tribe*, 2023 WL 1785278; *Kandra v. United States*, 145 F. Supp. 2d 1192 (D. Or. 2001).

In 2021, KID filed a motion for a preliminary injunction in the Klamath County Circuit Court seeking to stop Reclamation from releasing water from Upper Klamath Lake in accordance with its ESA responsibilities and the Tribes' rights. Due to the drought, such releases could delay access to, or limit the amount of, water available to satisfy KID's ACFFOD-determined allotment. Reclamation subsequently removed the action to federal district court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), on the grounds that KID's motion implicated issues of federal law and Reclamation planned to assert federal defenses. KID moved for remand on the basis that the Klamath County Circuit Court had prior exclusive jurisdiction over the rights determined in the ACFFOD. The district court declined to remand, reasoning that the McCarran Amendment's waiver of sovereign immunity did not apply because KID's motion for preliminary injunction did not seek to adjudicate or administer ACCFOD rights; rather, it sought to re-litigate federal issues—namely, Reclamation's authority to release water in compliance with the ESA and tribal rights. *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, No. 1:21-cv-00504-AA, 2022 WL 1210946, at *4–5 (D. Or. Apr. 25, 2022). KID then filed a petition for writ of mandamus in this court, seeking to compel the district court to remand its motion for preliminary injunction to the Klamath County Circuit Court.

## II.    Discussion

We have authority to issue a writ of mandamus under 28 U.S.C. § 1651.  Mandamus is an "extraordinary" remedy limited to "extraordinary causes."  *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947)).

Our court has long considered the following factors, commonly called *Bauman* factors, in determining whether mandamus is warranted:  (1) whether the petitioner has "no other adequate means, such as a direct appeal," to attain the desired relief, (2) whether "[t]he petitioner will be damaged or prejudiced in a way not correctable on appeal," (3) whether the "district court's order is clearly erroneous as a matter of law," (4) whether the order makes an "oft-repeated error, or manifests a persistent disregard of the federal rules," and (5) whether the order raises "new and important problems" or legal issues of first impression. *Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir. 1977).  We do not mechanically apply the *Bauman* factors. *Cole v. U.S. Dist. Ct.*, 366 F.3d 813, 817 (9th Cir. 2004).  As such, "[a] showing of only one factor does not mean the writ must be denied, nor does a showing of all factors mean that the writ must be granted."  *In re Mersho*, 6 F.4th 891, 898 (9th Cir. 2021).  ''Mandamus review is at bottom discretionary—even where the *Bauman* factors are satisfied, the court may deny the petition."  *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1099 (9th Cir. 1999).

### A.    Clear Error

We begin with the third factor—clear error as a matter of law—because it is "a necessary condition for granting a writ of mandamus."  *In re Van Dusen*, 654 F.3d 838, 841 (9th Cir. 2011).  Clear error is a deferential standard, requiring a

"firm conviction" that the district court "misinterpreted the law" or "committed a clear abuse of discretion." *In re Perez*, 749 F.3d 849, 855 (9th Cir. 2014).

Here, KID contends that the district court's denial of its motion to remand was clearly erroneous under the doctrine of prior exclusive jurisdiction, which "holds that when one court is exercising *in rem* [or *quasi in rem*] jurisdiction over a *res*, a second court will not assume *in rem* [or *quasi in rem*] jurisdiction over the same *res*." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1043 (9th Cir. 2011) (citation and internal quotations omitted); *State Engineer v. South Fork Band of the Te-Moak Tribe*, 339 F.3d 804, 811, 814 (9th Cir. 2003) (establishing that *quasi in rem* jurisdiction is sufficient for the doctrine of prior exclusive jurisdiction to bar concurrent state and federal proceedings). According to KID, the Klamath County Circuit Court had *in rem* jurisdiction over the ACFFOD (the *res*), and KID's motion for preliminary injunction could not be adjudicated "without determining the extent and effect of the rights" in that order.

The doctrine of prior exclusive jurisdiction does not apply here, however. The KBA did not adjudicate Reclamation's ESA obligations or the Tribes' senior rights, *Baley*, 942 F.3d at 1323, 1340–41, so the Klamath County Circuit Court did not have jurisdiction over the rights challenged by KID's motion. *Cf. United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1160–61 (9th Cir. 2010) (noting that the doctrine of prior exclusive jurisdiction did not bar a state court from exercising jurisdiction over an appeal of a state engineer's grant of water rights in a river, even though a federal district court had previously adjudicated rights in the same river, because the engineer's ruling was based on state law and did not affect the federally adjudicated rights).

OWRD has affirmatively taken the position in this matter that the ACFFOD does not adjudicate the challenges presented by KID's motion and the Klamath County Circuit Court's jurisdiction does not extend to those issues. It so stated in the answering brief that it filed in this case.[2] As noted above, *supra* page 9, it was OWRD that determined claims and prepared the ACFFOD that remains in effect while the judicial phase proceeds in Klamath County Circuit Court.

Reliance by the dissent on *State Engineer*, 339 F.3d 804, is misplaced. Dissent at 32–34. There, we determined that a removed action was *quasi in rem* because the parties' rights in the *res* (a river) served as the basis of jurisdiction, even though the action was brought against the defendants personally. *State Engineer*, 339 F.3d at 811. Because the action was *quasi in rem*, the doctrine of prior exclusive jurisdiction applied to bar concurrent state and federal actions, and remand to the state court was thus necessary. *Id.* at 811, 814. The state court in *State Engineer* had jurisdiction over the tribe's rights because the rights were governed by state law and subject to the state's general stream adjudication. *Id.* at 807–08.

Here, however, the Klamath County Circuit Court did not have jurisdiction over the Tribes' rights implicated by KID's motion because the Tribes' rights at issue were not

---

[2] OWRD's different stance before the Federal Circuit in *Baley*, 942 F.3d 1312, is irrelevant. The Federal Circuit rejected the agency's arguments. *Baley*, 942 F.3d at 1340–41. Before our court, the agency has reconsidered that losing position.

governed by Oregon law and were not subject to the KBA.**[3] [4]** *See Baley*, 942 F.3d at 1323, 1340–41. The McCarran Amendment, 43 U.S.C. § 666, "waives the United States' sovereign immunity for the limited purpose of allowing the Government to be joined as a defendant in a state adjudication [or administration] of water rights." *United States v. Adair*, 723 F.2d 1394, 1400 n.2 (9th Cir. 1983). It does not "authorize private suits to decide priorities between the United States and particular claimants[.]" *Metro. Water*

---

[3] The fact that, as the dissent notes, Dissent at 36–37, state courts *can* have jurisdiction to adjudicate federal reserved water rights is irrelevant here because neither the KBA nor the Klamath County Circuit Court exercised jurisdiction over the Tribes' rights. *Baley*, 942 F.3d at 1321, 1341 (observing that the Yurok and Hoopa Valley Tribes "did not participate in the Klamath Adjudication" in Oregon state court). A fair reading of *United States v. Oregon*, 44 F.3d at 770—and all other relevant federal litigation regarding the KBA to date—belies the dissent's assertion that we held "the McCarran Amendment 'required' Reclamation to submit federal water-rights claims to the jurisdiction of the Klamath County Circuit Court [on behalf of the Yurok and Hoopa Valley Tribes, both of which are located outside of Oregon's borders.]" Dissent at 25–26. Rather, we held simply that the KBA is "the sort of adjudication Congress meant to require the United States to participate in when it passed the McCarran Amendment." *Oregon*, 44 F.3d at 770. That case did not involve out-of-state parties.

[4] The dissent's observation, Dissent at 28–29, 29 n.9, that Reclamation acknowledged in an internal assessment that the ACFFOD barred water releases "to augment or otherwise produce instream flows in the Klamath River," which would preclude compliance with the ESA and the Tribes' rights, is irrelevant. As the Northern District of California recently explained in response to OWRD's attempt to stop Reclamation's water releases for non-ACFFOD rights and obligations, Reclamation *must* comply with the ESA. *Yurok Tribe*, 2023 WL 1785278, at *14–19. The court also held that OWRD's order, which directed Reclamation to stop releasing water for non-ACFFOD-determined rights, was preempted by the ESA and therefore violated the Supremacy Clause. *Id.*

*Dist. v. United States*, 830 F.2d 139, 144 (9th Cir. 1987), *aff'd sub nom. California v. United States*, 490 U.S. 920 (1988). Nor does it expand a state court's subject matter jurisdiction or empower a state to adjudicate rights beyond its jurisdiction, which, at bottom, is what KID's motion for a preliminary injunction seeks to do. *See United States v. Dist. Ct. for Eagle Cnty.*, 401 U.S. 520, 523 (1971); *Baley*, 942 F.3d at 1341 (explaining that the Tribes' "rights are federal reserved water rights not governed by state law" and that "states have the ability to adjudicate rights in a water or river within their jurisdiction, but they cannot adjudicate water rights in another state").

The dissent's focus on *in rem* jurisdiction because the water is stored in Upper Klamath Lake is not entirely misplaced, Dissent at 32–38, but it seems myopic for two reasons.[5]

---

[5] The dissent cites OWRD and U.S. Department of Justice documents indicating that OWRD noticed and adjudicated federal reserved rights for federal properties in northern California as part of the KBA. *E.g.*, Dissent at 25 n.1, 26 n.5, 35. However, neither party entered these documents into the record, nor discussed them in the briefs. As a general rule, "we rely on the parties to frame the issues for decision[.]" *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). This "rule reflects our limited role as neutral arbiters of legal contentions presented to us, and it avoids the potential for prejudice to parties who might otherwise find themselves losing a case on the basis of an argument to which they had no chance to respond." *United States v. Yates*, 16 F.4th 256, 270–71 (9th Cir. 2021).

Nevertheless, even if these documents were in the record, the fact remains that the KBA did not adjudicate the Tribes' rights—nor did it need to. *Baley*, 942 F.3d at 1323, 1340–41 ("[T]here is no need for a state adjudication to occur before federal reserved rights are recognized[.]"). The Tribes' rights take precedence over KID's

First, under the dissent's logic, Dissent at 34–35, a state could control all surface water within its borders by damming outflows, thereby attaining *in rem* jurisdiction over the pooled resource, which is essentially the position KID takes here.[6] Such a result is antithetical to the Supreme Court's interpretation of the term "river system" within the McCarran Amendment to mean one "within the particular State's jurisdiction[,]" which confines a state's adjudication to its own borders.[7][8] *See Eagle Cnty.*, 401 U.S. at 523.

---

ACFFOD rights under both the doctrine of prior appropriation, *Patterson*, 204 F.3d at 1213 (providing that the Tribes' senior rights "carry a priority date of time immemorial"), and as federal reserved rights, *Baley*, 942 F.3d at 1340 (quoting *Agua Caliente Band*, 849 F.3d at 1272) ("[S]tate water rights are preempted by federal reserved rights.").

[6] KID advanced this position at oral argument. *See* United States Court of Appeals for the Ninth Circuit, *22-70143 Klamath Irrigation District v. USDC-ORM*, YouTube (Nov. 18, 2022), https://youtu.be/EAVWqqx VTy4 (view minutes 14:18–16:16).

[7] Caselaw does not support the dissent's interpretation of the McCarran Amendment as geographically indifferent "to the location or nature of federal interests with asserted 'water rights' to an in-state 'river system or other source.'" Dissent at 45 n.23. We have never held that a state's adjudication could operate extraterritorially without the participation of impacted parties hundreds of miles away entirely within another state.

[8] The dissent's conclusion that Reclamation should have asserted the Tribes' reserved rights in an out-of-state proceeding because it holds their rights in trust, Dissent at 25–26, 26 n.3, ignores this limit on the McCarran Amendment's waiver of sovereign immunity. As the Supreme Court explained in relation to the Colorado River in *Eagle County*, 401 U.S. at 523, "[n]o suit by any State could possibly encompass all of the water rights in the entire Colorado River which runs through or touches many States." The dissent ignores the Supreme Court's admonition and instead advocates for such an all-encompassing

Second, the dissent overlooks the forum shopping at the heart of KID's petition.  KID and other similarly situated parties have not succeeded in previous federal lawsuits.  *See, e.g.*, *KID I*, 489 F. Supp. 3d 1168, *aff'd*, *KID II*, 48 F.4th 934, 947; *Patterson*, 204 F.3d 1206, 1213–14;[9] *Baley*, 942 F.3d 1312;[10] *Yurok Tribe*, 2023 WL 1785278, at \*6; *Kandra*, 145 F. Supp. 2d 1192.

By filing its underlying motion in state court, KID sought to litigate in a new forum, one it presumably hoped would be less concerned with the commands of the ESA and the rights of parties not before the court.[11]  With this perspective, it might fairly be said that KID seeks to deny other affected

---

interpretation of the KBA here.  But a "river system" within the McCarran Amendment "must be read as embracing one within the particular State's jurisdiction."  *Id.* at 523.

[9]  Based on tax records, *Kandra*, 145 F. Supp. at 1201, and other litigation documents, we infer that the *Patterson* plaintiff—the Klamath Water Users Protective Association ("KWUPA")—is the same entity as KWUA, which is the business name of the Klamath Basin Water Users Protective Association ("KBWUPA").  KID is a member of KBWUPA/KWUA.  *See supra* page 9.

Regardless of whether KWUPA is the same entity as KBWUPA/KWUA, the fact remains that, in *Patterson*, the plaintiff invoked its state contract rights to challenge Reclamation's authority to manage the Klamath Project in accordance with the ESA and tribal trust obligations.  This legal theory sounds familiar to us.

[10]  KID was a party in *Baley* until, following the trial and post-trial briefing, KID and the other irrigation districts voluntarily dismissed their claims before the court ruled against the remaining individual plaintiffs. *Baley*, 942 F.3d at 1318.

[11]  To be clear, we do not insinuate that the Klamath County Circuit Court would necessarily rule in KID's favor.  Rather, we mean only that KID seems to be seeking a new umpire because it has repeatedly struck out in multiple federal courts.

entities a meaningful forum and remedy.  The dissent does not alleviate these concerns, offering only the possibility of eventual review by the Supreme Court, after years of misdirection of the water that is the subject of these claims. Dissent at 39–40.

KID's other assertion—that the Klamath County Circuit Court had prior exclusive jurisdiction because its motion seeks to enforce rights determined in the ACFFOD—is undermined by *Klamath Irrigation District v. U.S. Bureau of Reclamation* (*KID II*), 48 F.4th 934 (9th Cir. 2022).[12]  There, we rejected KID's characterization of its suit as an administration of ACFFOD-determined rights and concluded that it was instead an Administrative Procedure Act challenge to Reclamation's authority to release water in compliance with the ESA and federal reserved water rights. *Id.* at 947.  Here, we similarly reject KID's attempt to circumvent our prior decision, the Tribes' rights, and the effect of the ESA by characterizing the relief it seeks as an application of the ACFFOD.[13]

---

[12]  We do not cite *KID II* for a preclusive effect, as the dissent alleges. Dissent at 40 n.19, 42 n.21.  As we explain, that case illustrates KID's framing of its legal theory as a McCarran Amendment "administration," when it actually sought to outmaneuver the force of the ESA and the Tribes' rights through an enforcement of the ACFFOD.  Here, KID attempts another end-run around the same federal rights under the guise of the McCarran Amendment.

[13]  We are not persuaded by the dissent's proposal to apply removal precedent to determine whether KID's petition is an "administration" under the McCarran Amendment.  Dissent at 43 (citing *Bell v. Hood*, 327 U.S. 678 (1946) (nonexistence of a cause of action is not a proper basis for a jurisdictional dismissal); *Jefferson County v. Acker*, 527 U.S. 423 (1999) (colorable federal defense is sufficient to invoke federal question

We do not reach the merits of KID's motion for preliminary injunction, as the dissent charges. Dissent at 39–40, 43. "We recognize that, at times, 'jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits.'" *Orff v. United States*, 358 F.3d 1137, 1150 (9th Cir. 2004) (quoting *Careau Grp. v. United Farm Workers*, 940 F.2d 1291, 1293 (9th Cir. 1991)). "But that is not the case here." *Id.* Our determination that the Klamath County Circuit Court did not have prior exclusive jurisdiction over the rights KID seeks to re-litigate does not depend on the merits of KID's motion for preliminary injunction "as the resolution of one does not depend on the resolution of the other." *Id.*

Further, we have never held that *any* issue implicating federal reserved water rights *always* goes to the merits of such issue and precludes a jurisdictional analysis. The dissent relies on inapposite cases to support this proposition. Dissent at 23, 39–40 (citing *United States v. Oregon*, 44 F.3d 758, 770 (9th Cir. 1984); *Eagle Cnty.*, 401 U.S. at 526; *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). These cases merely note that properly preserved issues implicating the amount and scope of federal reserved rights in state adjudications are reviewable by the Supreme Court after final judgment from the state court. *See Eagle Cnty.*, 401 U.S. at 525–26; *Colo. River*, 424 U.S. at 813; *Oregon*, 44 F.3d at 768–70.

Again, we express no views on the merits of KID's underlying motion for preliminary injunction. We only conclude that the Klamath County Circuit Court did not have

---

jurisdiction under the federal officer removal statute)). Both cases are inapposite as neither deal with the McCarran Amendment, stream adjudications, or any analogous issues to those before our Court.

prior exclusive jurisdiction over the rights KID seeks to re-litigate.  As such, the district court did not err in declining to remand the motion for preliminary injunction to the state court.

### B.        *Remaining* Bauman *Factors*

We need not consider the remaining *Bauman* factors because "the absence of the third factor, clear error, is dispositive." *Burlington N. & Santa Fe Railway v. Dist. Ct.*, 408 F.3d 1142, 1146 (9th Cir. 2005).  KID's petition does not satisfy them, in any event.  The district court's order did not "manifest[] a persistent disregard of the federal rules," nor did it raise legal issues of first impression.  *Bauman*, 557 F.2d at 655.

KID has "other adequate means" to attain its desired relief, *id. at* 654, as its underlying motion for preliminary injunction has simply been removed to the district court. Nothing prevents KID from seeking substantive relief before the district court, because, contrary to the dissent's characterization, Dissent at 39–40, 43, we neither adjudicate the merits of KID's motion, nor direct the district court on the merits.  KID may also seek interim injunctive relief from the district court.

Finally, KID will not be "damaged or prejudiced in a way not correctable on appeal" by litigating the underlying motion before the district court.  *Bauman*, 557 F.2d at 654. KID's lack of success in previous federal lawsuits and related litigation does not make the Klamath County Circuit Court the proper forum by default.   While the dissent expresses concern that any eventual appellate relief would be inadequate because KID's members may suffer a loss of water rights in the interim, Dissent at 46, the dissent's approach would threaten to impose exactly the same

deprivation on the Tribes, whose rights take precedence under both federal and state law over those asserted by KID. *See Patterson*, 204 F.3d at 1209, 1214; *Baley*, 942 F.3d at 1340; *Kandra*, 145 F. Supp. 2d at 1197, 1204; *Parravano*, 70 F.3d at 541–42, 545; *see also Agua Caliente Band*, 849 F.3d at 1272.

Accordingly, we do not conclude that this is an "exceptional" situation "amounting to a judicial usurpation of power or a clear abuse of discretion" that would justify the "extraordinary remedy" of mandamus. *See In re Holl*, 925 F.3d 1076, 1082 (9th Cir. 2019).

KID's petition for a writ of mandamus is **DENIED**.

---

BAKER, Judge, dissenting:

"[B]earing in mind the ubiquitous nature of Indian water rights in the [W]est," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 811 (1976), and that "in stream adjudications . . . each water rights claim by its very nature raises issues *inter se* as to all such parties for the determination of one claim necessarily affects the amount available for the other claims," *Nevada v. United States*, 463 U.S. 110, 140 (1983) (cleaned up), the mandamus petition filed by the Klamath Irrigation District (KID) presents an important question involving jurisdictional first principles: Does a comprehensive state court *in rem* water-rights proceeding have prior exclusive jurisdiction over a *quasi in rem* motion to enforce a decree governing rights to *in-state* water when the United States Bureau of Reclamation asserts defenses based on the reserved rights of *out-of-state* Indian tribes and the preemptive effect of the Endangered Species Act (ESA)?

In holding that the Klamath County (Oregon) Circuit Court lacks such prior exclusive jurisdiction, the majority gives four reasons. I respectfully disagree as to each.

First, the majority contends that because the Yurok and Hoopa Valley Tribes (the Tribes) are California-based, the Oregon state court lacks authority to adjudicate their rights to in-state water in the first instance. Opinion at 16–17. But as explained below, Oregon unquestionably has the power to adjudicate the rights of the Tribes and other out-of-state claimants to water within its borders through *in rem* proceedings, even as its exercise of such authority must respect federal reserved rights and interstate water rights. The irony of today's decision is that *we* may not pass judgment on the Klamath County Circuit Court's jurisdiction as a matter of *state* law.

Second, the majority observes that the decree governing the *res* (rights to stored water in Upper Klamath Lake in Oregon) did not adjudicate Reclamation's federal law defenses. *Id.* at 13–14. But what matters here is that KID's *quasi in rem* motion asserts rights under that decree, over which the state court has prior exclusive jurisdiction. The Bureau's defenses are irrelevant.

Third, the majority concludes that Reclamation's defenses defeat KID's motion. *Id.* at 14–15, 15 n.4, 16 n.5, 22. It's settled law, however, that questions concerning tribal reserved rights and other federal defenses in comprehensive water-rights proceedings "go to the merits," *United States v. Oregon*, 44 F.3d 758, 770 (9th Cir. 1994), and that state courts are presumptively competent to adjudicate those "federal questions which, if preserved, can be reviewed" in the Supreme Court "after final judgment by the [state] court." *United States v. Dist. Ct. in and for County of Eagle*,

401 U.S. 520, 526 (1971). Even if the Bureau's defenses are well-founded as the majority contends, that has no bearing on the state court's jurisdiction, which we must presume exists as a matter of state law.

Finally, the majority holds that the federal sovereign immunity waiver of the McCarran Amendment, 43 U.S.C. § 666(a), does not apply here because permitting KID to obtain relief under the decree would interfere with "the Tribes' rights" and the preemptive "effect of the ESA." Opinion at 19. Once again, the majority conflates the merits with jurisdiction. We should instead hold that KID's assertion of a *colorable* claim to enforce the decree governing the *res* suffices to trigger the Amendment's waiver under the test applied by the Supreme Court in analogous jurisdictional contexts. *Cf. Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

Because the Klamath County Circuit Court has prior exclusive jurisdiction over the order that KID's motion seeks to enforce, the district court necessarily committed a clear error of law in failing to remand. We should grant the mandamus petition and send KID's motion back to state court where it belongs.

I

In 1975, the Oregon Water Resources Department (OWRD) commenced a general stream adjudication (the Klamath Basin Adjudication, or KBA). *See United States v. Oregon*, 44 F.3d at 762. In so doing, OWRD sought to ascertain "the relative rights of the various claimants to the waters" of the Klamath Basin. ORS § 539.021(1). Under Oregon law, a general stream adjudication determines all water rights vested or initiated before February 24, 1909, including—of critical importance here—reserved federal

rights. *See* ORS § 539.010(7) (authorizing OWRD to "adjudicate federal reserved rights for the water necessary to fulfill the primary purpose of the reservation").

"[P]roceedings adjudicating" water rights in Oregon are "in rem," *Masterson v. Pac. Live Stock Co.*, 24 P.2d 1046, 1048 (Or. 1933), meaning that the KBA is "directly against the property"—in this instance, water rights in Upper Klamath Lake—"and [involves] an adjudication against all mankind equally binding upon everyone," *Linn County v. Rozelle*, 162 P.2d 150, 156 (Or. 1945). And because the KBA is against the world, "person[s] . . . claim[ing] legal title to a water right [were required to] file a claim in the adjudication or lose the right." *Klamath Irrigation Dist. v. United States*, 227 P.3d 1145, 1166 (Or. 2010); *see also* ORS § 539.210 (same); *Pac. Live Stock Co. v. Lewis*, 241 U.S. 440, 447–48 (1916) (same). Accordingly, OWRD provided notice of the KBA to federal users in both Oregon *and* California.[1]

Even though we held that the McCarran Amendment "required" Reclamation to submit federal water-rights claims to the jurisdiction of the Klamath County Circuit

---

[1] In 1996, OWRD gave notice "to the United States Attorney General claiming a federal reserved right or a right to the use of the waters of the Klamath River and its tributaries, diverted in Oregon and used within Klamath, Jackson, and Lake Counties, Oregon[,] *and Modoc and Siskiyou Counties, California*," that it would receive proofs of claim between October 1, 1996, and January 31, 1997, from "all parties claiming rights to the use of waters of the Klamath River or any of its tributaries." KBA order at Appendix H-2 (emphasis added), *available at* https://www.oregon.gov/owrd/programs/WaterRights/Adjudications/Kl amathAdj/KBA_APP_133626.PDF. Reclamation "uses" water by releasing it from Upper Klamath Lake for the benefit of the California-based Tribes.

Court, *United States v. Oregon*, 44 F.3d at 770, the Bureau[2] failed to file any such claim on behalf of the Tribes, to whom the government owes trust obligations. *See Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 549 (1983);[3] *cf. Nevada v. United States*, 463 U.S. at 143–44 (explaining that an Indian tribe's water rights were lost because the government failed to assert them in "a comprehensive adjudication of water rights intended to settle once and for all the question of how much of the Truckee River each of the litigants was entitled to," as "water adjudications are more in the nature of *in rem* proceedings").

In 2014, OWRD filed a decree (the KBA order)[4] that provisionally governs water rights in Upper Klamath Lake, including the rights of federal properties in California,[5]

---

[2] Under the Reclamation Act, absent superseding federal law, the Bureau must "comply with state law in the 'control, appropriation, use, or distribution of water.' " *California v. United States*, 438 U.S. 645, 674–75 (1978) (quoting 43 U.S.C. § 383); *see also id*. at 675 ("The legislative history of the Reclamation Act of 1902 makes it abundantly clear that Congress intended to defer to the substance, as well as the form, of state water law.").

[3] Thus, the majority's contention that the "Tribes' rights at issue . . . were not subject to the KBA," Opinion at 14–15, is incorrect. *Reclamation* is subject to the KBA and holds the Tribes' rights in trust.

[4] The parties call the KBA order the "ACFFOD," shorthand for "Amended and Corrected Findings of Fact and Final Order of Determination."

[5] The Justice Department explains that "[i]f the administrative findings and conclusions [in the KBA order] are ultimately sustained by the state circuit court, they will approve numerous significant federal reserved rights and state appropriative rights for a national park, national forests, wilderness areas, wild and scenic rivers, wildlife refuges, Indian reservations, and the Klamath Reclamation Project encompassing

pending a final adjudication by the state court. *See* ORS § 539.170; *see also Lewis*, 241 U.S. at 455 ("[I]t is within the power of the state to require that, pending the final adjudication, the water shall be distributed according to [OWRD]'s order, unless a suitable bond be given to stay its operation."). Under Oregon law, the "Klamath County Circuit Court has exclusive subject matter jurisdiction to review the KBA order." *TPC, LLC v. Or. Water Res. Dep't*, 482 P.3d 121, 129 (Or. App. 2020).

On March 29, 2021, KID moved for a preliminary injunction in the Klamath County Circuit Court,[6] arguing

---

200,000 acres in southern Oregon *and northern California*." U.S. Dep't of Justice, Environment & Natural Resources Division, *ENRD Accomplishments Report Fiscal Year 2013*, at 74 (emphasis added), https://www.justice.gov/sites/default/files/enrd/legacy/2015/04/13/ENRD_Accomplishments_Report_2013_2.pdf. One of the national wildlife refuges that DOJ referred to is the Tule Lake National Wildlife Refuge, located entirely in Northern California. *See Kandra v. United States*, 145 F. Supp. 2d 1192, 1196 (D. Or. 2001) ("Two national wildlife refuges, the Lower Klamath and Tule Lake National Wildlife Refuges, depend on the [Klamath Reclamation] Project for water and receive large quantities of return irrigation flows and other Project waters.").

[6] Earlier, KID sued Reclamation in Oregon district court seeking relief under the Administrative Procedure Act (APA). *See Klamath Irrigation Dist. v. Bureau of Reclamation*, No. 1:19-cv-451-CL, Dkt. No. 70 (D. Or.) (KID's second amended complaint for declaratory and injunctive relief). After the Klamath and Hoopa Tribes then intervened to seek dismissal, the district court dismissed the suit in 2020 for lack of jurisdiction. The court reasoned that the Tribes were required parties, *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 489 F. Supp. 3d 1168, 1176–81 (D. Or. 2020) (*KID I*), and that sovereign immunity—which they did not waive—prevented their joinder, *id.* at 1181–82. While its appeal to our Court was pending, KID filed its motion in the Klamath County Circuit Court. We later affirmed the district court's dismissal.

that Reclamation's ongoing water releases violate the KBA order, which provides that the United States only owns the right to *store* water. Pet. 66[7] (citing KBA order, Pet. 109); *see also* KBA order, Pet. 121 (providing that "[t]he United States also holds a separate right for storage of water in Upper Klamath Lake *for the benefit of the irrigation rights recognized in this Partial Order of Determination*") (emphasis added).[8]

KID's motion also contends that Reclamation's right to store water does not give the Bureau any right to *use* that water, quoting *Cookinham v. Lewis*, 114 P. 88, 91 (Or. 1911), for the proposition that a primary storage right "does not include the right to divert and use [. . .] stored water, which must be the subject of the secondary permit." Pet. 66; *see also* KBA order, Pet. 122 ("[T]he right to store water is distinct from the right to use stored water . . . ."). The motion asserts that the KBA order instead grants "KID and other water right holders" the "secondary right to beneficially use" the water stored by the Bureau. Pet. 66 (citing KBA order, Pet. 121–22).

The motion further argues that KID's "secondary water rights to *stored water* in [Upper Klamath Lake] reservoir cannot be 'called' or curtailed by any water rights—even

---

*Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th 934 (9th Cir. 2022) (*KID II*).

[7] This citation, and others in the same form, refers to the ECF page number in the upper right corner of KID's mandamus petition and attached exhibits, e.g., "(66 of 1311)."

[8] I recount KID's allegations in some detail because, as discussed below, these allegations are highly relevant to whether it has asserted a *colorable* claim that Reclamation water distributions violate the KBA order.

senior water rights—[downstream] *in the Klamath River*." Pet. 67 (emphasis in original and citing various Oregon statutes and authorities). Indeed, the motion explains that Reclamation *admits* that the KBA order bars the Bureau from "releas[ing] water previously stored in priority and otherwise required for beneficial use by Klamath Project beneficiaries from Upper Klamath Lake for the specific purposes of producing instream flows in the Klamath River either in Oregon or California." Pet. 64 (quoting Bureau of Reclamation, *Reassessment of U.S. Bureau of Reclamation Klamath Project Operations to Facilitate Compliance with Section 7(a)(2) of the Endangered Species Act*, Jan. 2021, Pet. 174).[9] Nevertheless, the motion claims that the agency is distributing "vast quantities of stored water" out of the lake "to provide enhanced instream flows in the Klamath River in California." *Id*. at 67.

Anticipating defenses likely to be raised by Reclamation, KID's motion asserts that the Bureau's trust obligations to the Tribes "afford no water rights to use stored water in [Upper Klamath Lake], *as neither Tribe (nor Reclamation on their behalf) has ever claimed a water right in [Upper Klamath Lake] in the Klamath Adjudication*." Pet. 60 (emphasis added).[10] Similarly, the motion argues that the

[9] That same statement from Reclamation explains that the KBA order "*preclude[s] releases of water previously stored in priority in Upper Klamath Lake for satisfying the Yurok and Hoopa Tribes' federally reserved water right.*" Pet. 175 (emphasis added).

[10] If Reclamation forfeited the Tribes' rights by not filing a claim on their behalf in the KBA, they would not lack a remedy for the government's breach of its trust obligations. *See* 28 U.S.C. § 1505 (Indian Tucker Act providing for jurisdiction in the Court of Federal Claims for claims by tribes against the United States); *cf. Nevada v. United States*, 463 U.S. at

ESA does not override the agency's Reclamation Act obligation to comply with state law in distributing water from Upper Klamath Lake. Pet. 77–80.[11]

Finally, KID's motion includes declarations from several of its farmer and rancher members, irrigators who depend on the water of Upper Klamath Lake. One explains that "[f]arming involves significant up-front costs with long delays before the crops actually result in revenue." Pet. 294. All the declarants assert that they face the risk of bankruptcy

---

144 n.16 ("In this case, the Tribe, through the Government as their representative, was given adequate notice and a full and fair opportunity to be heard. If, in carrying out their role as representative, the Government violated its obligations to the Tribe, then the Tribe's remedy is against the Government, not against third parties."); *see also id*. at 145 (Brennan, J., concurring) ("I join the Court's opinion on the understanding that it reaffirms that the Pyramid Lake Paiute Tribe has a remedy against the United States for the breach of duty that the United States has admitted.").

[11] The majority contends that "KID's rights are subservient to the Tribes' rights and Reclamation's ESA responsibilities." Opinion at 10 (citing *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1213 (9th Cir. 1999)). But the administrative adjudication phase of the KBA was then ongoing, prompting us to qualify our holding: The KBA "*will . . . decide*[]" "questions of relative amounts and priorities, at least within the State of Oregon . . . . Our decision in this case . . . relate[s] only to questions involving the Bureau's operation and management of the [Klamath Basin] Project, *and not to the relative rights of others not before the court to the use of the waters of the Basin*." *Patterson*, 204 F.3d at 1214 n.3 (emphasis added). KID was not a party to *Patterson*, and to what extent its rights under the KBA order are "subservient" to the Tribes' rights and Reclamation's ESA responsibilities when the Bureau failed to assert a claim on the Tribes' behalf is precisely the question raised by KID's motion. In any event, even if KID were bound by *Patterson*, it could not have asserted any claim in that action to enforce the KBA order, which OWRD only first issued in 2013 (some 14 years after our ruling in *Patterson*).

or liquidating assets because of Reclamation-induced water shortages. Pet. 86–100; Pet. 293–310. For example, one states that "[w]ithout the water KID and I own rights to, I cannot grow crops, and therefore cannot generate revenue to pay debt and maintain the business." Pet. 93. The effects from "water shortages in a particular year can impact not only year-to-year crops, but crops that require a longer-term investment and commitment." Pet. 294.

Citing the federal officer removal statute, 28 U.S.C. § 1442(a)(1), the Bureau removed KID's motion to the district court. Reclamation's removal notice admits that KID's motion seeks to bar the Bureau's releases of water from Upper Klamath Lake to the extent such releases "*conflict with state-based water rights determined in the* [*KBA order*]." Pet. 353 (emphasis added). The notice expressly identifies two federal "defenses" to KID's claims, "senior federal reserved Tribal fishing and water rights" and "sovereign immunity." Pet. 354.

KID then moved to remand, arguing that the prior exclusive jurisdiction doctrine applies here. Under that doctrine, even if removal were otherwise proper,[12] the district court nevertheless lacked jurisdiction if KID's motion is *in rem* or *quasi in rem*, because the state court proceeding is *in rem*. *See Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1253 (9th Cir. 2017) ("If both courts exercise either *in rem* or *quasi in rem* jurisdiction, then the courts may be simultaneously

---

[12] *See State Eng'r of State of Nev. v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians of Nev.*, 339 F.3d 804, 809 (9th Cir. 2003) ("Section 1442 . . . merely allows the federal government to remove a case to federal district court; it does not determine whether the court has jurisdiction to hear it.").

exercising jurisdiction over the same property, in which case the prior exclusive jurisdiction doctrine applies and the district court is precluded from exercising jurisdiction over the *res*.").

The district court denied the remand motion, reasoning that "KID seeks to reach beyond the limited waiver of the McCarran Amendment to litigate federal issues, most notably Reclamation's release of water to satisfy the instream water rights of the Yurok and Hoopa Valley Tribes and the co-extensive demands of the ESA." Pet. 1263. Because "KID's motion for preliminary injunction does not come within the McCarran Amendment's waiver . . . the KBA [does not] possess exclusive jurisdiction over the claim." *Id*. KID then filed its mandamus petition.

## II

It's undisputed that the Klamath County Circuit Court has *in rem* jurisdiction over rights to the stored water (the *res*) of Upper Klamath Lake in Oregon. It's similarly undisputed that the KBA order provisionally governs Reclamation's distributions from that *res* pending a final adjudication by the state court. As described above, and as the Bureau admitted in its notice of removal, *see* Pet. 353, KID's motion manifestly seeks to enforce that order.

This case is therefore much like *State Engineer*, where we held that to determine whether a removed action encroached upon prior exclusive jurisdiction of a state court, a district court must "look behind the form of the action to the gravamen of a complaint and the nature of the right sued on." 339 F.3d at 810 (cleaned up). As in *State Engineer*, "[t]here can be no serious dispute that [KID's motion] was brought to enforce a decree"—the KBA order—"over a res"—i.e., the rights to the stored waters of Upper Klamath

Lake. *Id*. at 811. "Given the zero-sum nature of the resource, any party's unlawful diversion of water from the [lake] necessarily affects other users." *Id.* Thus, the district court cannot adjudicate KID's and Reclamation's "personal claims to [the] property without disturbing the first court's jurisdiction over the res." *Id*. While KID's motion "is brought only against the [Bureau] personally," because "the parties' interests in the property"—the KBA order—"serve as the basis [for] jurisdiction," the motion "is *quasi in rem*, and the doctrine of prior exclusive jurisdiction fully applies." *Id*. (cleaned up); *see also Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958) (defining *quasi in rem* actions as including those in which "the plaintiff [seeks] to secure a pre-existing claim in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons");[13] *Penn Gen. Cas. Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 195 (1935) (if "two suits are in rem or quasi in rem, . . . the court first assuming jurisdiction over

---

[13] In a *quasi in rem* action, "the basis of jurisdiction is the defendant's interest in property, real or personal, which is within the court's power, as distinguished from in rem jurisdiction in which the court exercises power over the property itself, not simply the defendant's interest therein." *Black's Law Dictionary* 794 (6th ed. 1990). Applied here, the basis of jurisdiction over KID's *quasi in rem* motion is the KBA order, which adjudicated the parties' interests and over which the Klamath County Circuit Court has continuing exclusive jurisdiction. *See TPC*, 482 P.3d at 129; *cf. United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1013, 1014 (9th Cir. 1999) (a federal district court had prior exclusive jurisdiction "over the water rights in question when it adjudicated the Alpine and Orr Ditch Decrees and . . . continued to retain such jurisdiction," and "to construe these Decrees so that the district court does not retain exclusive jurisdiction would render the retention of jurisdiction a nullity").

the property may maintain and exercise that jurisdiction to the exclusion of the other").

The majority, however, offers in essence four reasons why the prior exclusive jurisdiction doctrine does not apply here. I consider each in turn.

A

Although not expressed as such, the majority implies that the Klamath County Circuit Court lacks jurisdiction *ab initio* insofar as Reclamation defends its water distributions based on the reserved rights of the California-based Tribes. Opinion at 16 (averring that a state may not "adjudicate rights beyond its jurisdiction, which, at bottom, is what KID's motion for a preliminary injunction seeks to do") (citing *Eagle County*, 401 U.S. at 523, and *Baley v. United States*, 942 F.3d 1312, 1341 (Fed. Cir. 2019)). *Eagle County* observed that the term "river system" in the McCarran Amendment "must be read as embracing one *within the particular State's jurisdiction*," for "[n]o suit by any State could possibly encompass all of the water rights" in an entire interstate river system such as the Colorado River. 401 U.S. at 523 (emphasis added).[14]

The Klamath County Circuit Court's exercise of jurisdiction over the Tribes' claims is consistent with *Eagle County*, however, because the water in question is inside Oregon. As to " 'property within its limits,' " a state "possess[es] the *power* to provide for the adjudication of titles to [property] not only as against residents, *but as*

___

[14] Citing this observation, in *Baley* the Federal Circuit simply asserted—with no analysis to speak of—that the Klamath County Circuit Court lacked the power to adjudicate the rights of the California-based Tribes to water stored in Oregon. *See* 942 F.3d at 1341.

*against nonresidents*, who might be brought into court by publication." *Am. Land Co. v. Zeiss*, 219 U.S. 47, 61 (1911) (emphasis added) (quoting *Arndt v. Griggs*, 134 U.S. 316, 320 (1890)). Such an *in rem* "procedure established by the state . . . is binding upon the federal courts." *Arndt*, 134 U.S. at 321. Oregon has established such a procedure for water rights, and it specifically confers jurisdiction to "adjudicate federal reserved rights." ORS § 539.010(7).

That Oregon cannot subject the Tribes to *in personam* jurisdiction is irrelevant because the KBA is *in rem*. *See* 4A C. Wright & A. Miller, *Federal Practice & Procedure* § 1070 (4th ed. 2022 update) ("The fact that the court cannot obtain jurisdiction over the person of all defendants or claimants to the property is considered irrelevant to whether in rem or quasi-in-rem jurisdiction is constitutionally permissible."); *see also Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 453 (2004) (same); *Arndt*, 134 U.S. at 320–21 (same). And because the KBA is *in rem*, as described above, OWRD—after giving notice—exercised its authority under state law to adjudicate the reserved rights of federal properties in *both* Oregon and California in the KBA order.[15]

---

[15] Invoking the party-presentation rule, *see United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020), the majority contends that because KID did not cite OWRD's notice to federal users in California or the Justice Department's public acknowledgment that the KBA order governs water rights of federal properties in California, we should ignore those documents, Opinion at 16 n.5, even though they bear directly on KID's contention that the order adjudicated water rights, including federal reserved rights, "as against the whole world," Pet. 25 (quoting *Goncalves*, 865 F.3d at 1254); *see also* Pet. Reply at 21 n.2 (arguing "Reclamation's suggestion that California tribes who did not participate in the [KBA] may still claim water rights in [Upper Klamath Lake] is

That a state court's exercise of *in rem* jurisdiction in the context of water rights requires it to respect federal reserved rights and other limits on its authority such as interstate compacts does not mean that it lacks *power* in the first instance to determine those constraints. The Supreme Court has repeatedly emphasized that states have "plenary control" over water within their borders, *California v. United States*, 438 U.S. at 657–58 (quoting *Cal. Or. Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142, 163–64 (1935)), even as this "total authority" is subject to "the reserved rights or navigation servitude of the United States," *id*. at 662; *cf. Santa Fe Trail Ranches Prop. Owners Ass'n v. Simpson*, 990 P.2d 46, 54 n.12 (Colo. 1999) ("The availability of water arising in Colorado for beneficial use in Colorado is limited by the delivery requirements of the interstate compacts and equitable apportionment decrees to which Colorado is a party."); *Mississippi v. Tennessee*, 142 S. Ct. 31, 41 (2021)

---

wrong" because an "in rem proceeding . . . determines rights in particular property against the entire world").

Post-*Sineneng-Smith*, however, we have recognized that "when an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Does v. Wasden*, 982 F.3d 784, 793 (9th Cir. 2020) (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)). KID's mandamus petition squarely raises the *issue* of whether the KBA order is effective against the world, and just as we may consider cases not cited by the parties bearing on that issue, we may also sua sponte take judicial notice of relevant public records. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court may take judicial notice of matters of public record . . . .") (cleaned up); *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 858 n.2 (9th Cir. 2022) (sua sponte taking judicial notice). Thus, the majority sua sponte takes judicial notice of a public document in an attempt to link KID to the Klamath Water Users Association. Opinion at 9, 18 n.9.

("When a water resource is shared between several States, each one has an interest which should be respected by the other.") (cleaned up).**[16]**

Not only does the Klamath County Circuit Court have the power to adjudicate *inter se* the water rights of all claimants to the waters of Upper Klamath Lake, but *we* also lack the prerogative to opine on the state-law limits of that court's exercise of such authority. *See San Carlos Apache Tribe*, 463 U.S. at 561 (stating that whether state courts have jurisdiction over Indian water-rights issues "is a question . . . over which the state courts have binding authority" and that where, as here, a state court has taken jurisdiction, federal courts "must assume, until informed otherwise, that—at least insofar as state law is concerned—such jurisdiction exists"). As far as we are concerned, the only relevant question is "whether there is a federal bar to the assertion of state jurisdiction" by the Klamath County Circuit Court. *Id*. The only such bar raised here by Reclamation is sovereign immunity, discussed below.

B

According to the majority, the second reason the Klamath County Circuit Court lacks prior exclusive jurisdiction over KID's motion is because "[t]he KBA [order] did not adjudicate Reclamation's ESA obligations or the Tribes' senior rights . . . ." Opinion at 13 (citing *United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1160–61 (9th

---

[16] The Klamath River Basin Compact governs the equitable apportionment of water between Oregon and California users in the Klamath Basin. *See* ORS § 542.620. That compact, while otherwise binding in the KBA, *see id*. Art. XII.A., expressly excludes reserved federal rights, including tribal rights, from its scope. *See id*. Arts. X, XI.

Cir. 2010)). Along the same lines, the majority attempts to distinguish *State Engineer*, contending that while the state court there "had jurisdiction over the tribe's rights because the rights were governed by state law and subject to the state's general stream adjudication," here the Klamath County Circuit Court "did not have jurisdiction over the Tribes' rights implicated by KID's motion because the Tribes' rights at issue were not governed by Oregon law and were not subject to the KBA." *Id*. at 14–15.

Whether the KBA order adjudicated the Bureau's federal *defenses*, however, is irrelevant because the prior exclusive jurisdiction doctrine turns on "*the nature of the right sued on*." *State Eng'r*, 339 F.3d at 810 (emphasis added); *cf. Hanson*, 357 U.S. at 246 n.12 (noting that in a *quasi in rem* action "the plaintiff [seeks] to secure a pre-existing *claim* in the subject property and to extinguish or establish the nonexistence of similar interests of particular persons") (emphasis added). The *KBA order* is the source of KID's asserted water rights, and under state law the Klamath County Circuit Court has prior exclusive jurisdiction to enforce and interpret it. *TPC*, 482 P.3d at 129.

The majority's reliance on *Orr Water Ditch* is therefore misplaced. In that case, we held that the district court with prior exclusive jurisdiction over a Nevada water-rights decree lacked jurisdiction over an Indian tribe's attempt to enforce water rights based on "state law" *rather than* "the Tribe's rights under the [federal] decree." 600 F.3d at 1160. Here, by contrast, KID's motion asserts rights under the KBA order, over which the state court does have jurisdiction, and prior exclusive jurisdiction to boot. Moreover, whereas we had authority in *Orr Water Ditch* to opine on the district court's jurisdiction, we have no such authority as to the Klamath County Circuit Court.

C

The majority's third reason for holding that the state court lacks jurisdiction over KID's motion is that Reclamation did not "need" to assert any claim on behalf of the Tribes in the KBA to avoid forfeiture because their rights are "not governed by Oregon law" and "take precedence over KID's." Opinion at 14–15, 16 n.5, 22. Similarly, the majority contends that the Bureau's ESA obligations preempt the KBA order that KID seeks to enforce. *Id*. at 15 n.4.

In so holding, the majority errs by putting "the merits cart before the jurisdictional horse." *Bean v. Matteucci*, 986 F.3d 1128, 1137 (9th Cir. 2021) (Rawlinson, J., dissenting). In *United States v. Oregon*, we held that "concerns" over "federal reserve[d] water rights" "*go to the merits.*" 44 F.3d at 770 (emphasis added). We explained that "in administering water rights the State is compelled to respect federal law regarding federal reserved rights and to the extent it does not, its judgments are reviewable by the Supreme Court." *Id.* (citing *Eagle County*, 401 U.S. at 525–26); *see also Eagle County*, 401 U.S. at 526 ("All . . . questions" in state water rights adjudications "going to the merits," "including the volume and scope of particular reserved rights, are federal questions which, if preserved, can be reviewed here after final judgment by the [state] court."); *Colo. River*, 424 U.S. at 813 (same).[17] Thus, the

---

[17] The majority hints that Oregon courts might tolerate "years of misdirection of the water" before the Supreme Court could step in. Opinion at 19. But under Our Federalism, *cf. Younger v. Harris*, 401 U.S. 37, 44 (1971), "[s]tate courts are adequate forums for the vindication of federal rights," *Burt v. Titlow*, 571 U.S. 12, 19 (2013), for they, "as much

majority's determination that Reclamation's federal defenses are meritorious[18] is irrelevant to whether the state court has *jurisdiction* to decide KID's motion to enforce the decree, including those defenses.[19] As a matter of *state* law, we must presume that "such jurisdiction exists." *San Carlos Apache Tribe*, 463 U.S. at 561.

## D

Finally, the majority contends that the Klamath County Circuit Court lacks prior exclusive jurisdiction as a matter of *federal* law because the McCarran Amendment does not apply to KID's motion. Opinion at 14–15, 19. That statute

---

as federal courts, have a solemn obligation to follow federal law," *San Carlos Apache Tribe*, 463 U.S. at 571. In any event, "[a]ny state court decision alleged to abridge Indian water rights protected by federal law can expect to receive, if brought for review before this Court, a particularized and exacting scrutiny commensurate with the powerful federal interest in safeguarding those rights from state encroachment." *Id*.

[18] In the face of the majority's blanket endorsement of Reclamation's defenses, the only thing left for the district court to do on remand is to enter summary judgment for the Bureau—if it doesn't first dismiss for lack of jurisdiction if the Tribes intervene, as in *KID I*.

[19] The majority's charge that KID is guilty of forum shopping is similarly irrelevant to the actual issue before us, as there is no "forum shopping exception" to the prior exclusive jurisdiction doctrine. Insofar as the majority applies preclusion by another name, *see* Opinion at 11, 20, and 21 (characterizing KID's motion as an attempt to "re-litigate" Reclamation's federal defenses), it fails to explain—putting aside the failure of the government to even raise that defense, *cf. Sineneng-Smith*, 140 S. Ct. at 1579—how the requirements of preclusion are satisfied here. Finally, even if preclusion might otherwise operate as a *merits* bar to KID's motion to enforce the KBA order, that would still not deprive the Klamath County Circuit Court of its prior exclusive *jurisdiction* to adjudicate the merits, including any preclusion defense asserted by the Bureau.

waives federal sovereign immunity as to "any suit (1) for the adjudication" or "(2) for the administration" "of rights to the use of water of a river system or other source . . . ." 43 U.S.C. § 666(a).

To begin with, it is undisputed that the KBA order is an "adjudication" of water rights as to Upper Klamath Lake under the McCarran Amendment, as the order provisionally determined "all of the rights of various owners on a given stream," *Dugan v. Rank*, 372 U.S. 609, 618 (1963) (quoting S. Rep. No. 755, 82d Cong., 1st Sess. 9 (1951)), including the relative rights of KID and the United States. We have held that where, as here, "there has been such an adjudication and a decree entered, then one or more persons who hold adjudicated water rights can" sue to "administer" such rights under the statute. *S. Delta Water Agency v. United States*, 767 F.2d 531, 541 (9th Cir. 1985) (quoting *United States v. Hennen*, 300 F. Supp. 256, 263 (D. Nev. 1968)).

So the question is whether KID's motion is a McCarran Amendment "administration." We have held that "[t]o administer a decree is to execute it, to enforce its provisions, to resolve conflicts as to its meaning, to construe and to interpret its language." *Id.* (quoting *Hennen*, 300 F. Supp. at 263). As detailed above, KID's motion manifestly seeks to enforce the KBA order, resolve conflicts as to its meaning, and construe and interpret its provisions. Indeed, Reclamation's notice of removal expressly acknowledges that KID's motion alleges that the Bureau's ongoing water releases "*conflict with state-based water rights determined in the* [*KBA order*]," Pet. 353 (emphasis added), and thereby

tacitly admits that KID's motion is a McCarran Amendment "administration."[20]

For its part, the majority "reject[s]" what it portrays as KID's "characteriz[ation] [of] the relief it seeks as an application of the [KBA order]" because that characterization "circumvent[s] our prior decision [in *KID II*], the Tribes' rights, and the effect of the ESA." Opinion at 19.[21] In substance, my colleagues appear to conclude that

_____

[20] Because KID's motion seeks to enforce the KBA order, the majority's assertion that KID's motion is a mere "private suit[] to decide priorities between the United States and particular claimants" (and thus outside the McCarran Amendment), Opinion at 15 (quoting *Metro. Water Dist. of S. Cal. v. United States*, 830 F.2d 139, 144 (9th Cir. 1983)), misses the mark. In *Metropolitan Water District*, a water district brought an APA action challenging the Interior Department's enlargement of the boundaries of an Indian reservation that resulted in the tribe's assertion of increased water rights in a then-ongoing water rights adjudication between Arizona and California under the Supreme Court's original jurisdiction. 830 F.2d at 140–42. We held that the McCarran Amendment was inapplicable because the water district's APA action was not a "general adjudication" to determine "the rights of all claimants on a stream." *Id*. at 144 (citing *Dugan*, 372 U.S. at 617–18). The KBA, however, *is* indisputably such a general adjudication, and KID's motion seeks to enforce its rights under the order provisionally governing that adjudication.

[21] In *KID II*, we held that KID's separate APA suit in the district court challenging Reclamation's water releases was not a McCarran Amendment "administration" and thus was outside the scope of the sovereign immunity waiver. 48 F.4th at 947. We expressly recognized, however, that the KBA "*was* a McCarran Amendment case." *Id.* at 946 (emphasis in original). *KID II* therefore does not control whether KID's motion—which seeks no relief under the APA and was originally filed in the KBA—is an "administration" for purposes of the Amendment. Tellingly, Reclamation does not argue that *KID II* is issue preclusive here.

KID's motion is not a McCarran Amendment "administration" because Reclamation's federal defenses are meritorious.[22]

In so reasoning, the majority requires KID to "win [its] case before [it] can" litigate its motion in state court. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). But in analogous contexts, the Supreme Court applies a simple test that we should employ here: If the party invoking jurisdiction asserts (as applicable) a colorable claim or defense on the merits, that suffices for jurisdiction to attach, even if the merits claim or defense ultimately fails. *See, e.g.*, *Bell*, 327 U.S. at 682–83 (holding that an asserted federal claim triggers federal question jurisdiction unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous"); *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999) ("To qualify for removal" under the federal officer removal statute, a removing officer need only "raise a colorable federal defense," as the official need not "win his case before he can have it removed.") (quoting *Willingham*, 395 U.S. at 407).

Thus, a valid *defense* does not oust a district court of federal question jurisdiction if a complaint asserts a colorable federal claim. *See, e.g.*, *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) ("[W]hether a plaintiff has pled a jurisdiction-conferring

---

[22] Insofar as the majority also implies that the McCarran Amendment does not apply merely because Reclamation's federal defenses are "not governed by Oregon law," Opinion at 14–15, that interpretation renders the Amendment useless as such defenses by definition are *never* "governed by state law," *id*. at 14. The entire point of the statute is to allow state courts "to determine federal reserved rights . . . ." *Colo. River*, 424 U.S. at 809.

claim is a wholly separate issue from whether the complaint adequately states a legally cognizable claim for relief on the merits."); 13D Wright & Miller, *Federal Practice & Procedure: Jurisdiction* § 3564 (3d ed. Apr. 2022 update) ("Jurisdiction is not lost because the court ultimately concludes that the federal claim is without merit.").

Rather than asking whether KID's motion can *prevail* against the government's ESA and reserved water rights defenses as the majority does, we should ask—consistent with the Supreme Court's approach in other jurisdictional contexts—whether KID's motion asserts a *colorable* McCarran Amendment administration claim. Just as Reclamation's assertion of "colorable" federal defenses in its notice of removal permitted the Bureau to invoke the federal officer removal statute here, *Acker*, 527 U.S. at 431, I would correspondingly hold that KID's assertion of a colorable motion to enforce the KBA order is an "administration" that implicates the Amendment's waiver of sovereign immunity—whether or not that motion states a legally cognizable claim for relief on the merits.

Because "jurisdictional rules should be clear," *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 621 (2002), we should adopt the easily administered, bright-line test of *Bell v. Hood* for McCarran Amendment purposes. Doing so would allow the Amendment to perform its function of clearing the way for state courts to adjudicate the merits of "collision[s]" between "private [water] rights and [the] reserved rights of the United States" "in unified proceedings" that avoid "piecemeal adjudication of water

rights in a river system." *Colo. River*, 424 U.S. at 813 (quoting *Eagle County*, 401 U.S. at 526).[23]

## III

For the reasons explained above, the Klamath County Circuit Court has prior exclusive jurisdiction to decide KID's motion. The district court therefore committed a clear error of law in failing to remand that motion. *See Chapman v. Deutsche Bank Nat'l Tr. Co.*, 651 F.3d 1039, 1044 n.1 (9th Cir. 2011) (stating that "if the [prior exclusive jurisdiction] doctrine applies, it is legal error for a district court not to remand, dismiss, or stay federal proceedings on account of the state court's prior exercise of jurisdiction").

KID's right to mandamus relief based on this error "is clear and indisputable," *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 381 (2004) (cleaned up), satisfying a prerequisite for mandamus relief set forth by both the Supreme Court and this Court. *See id.*; *see also Bauman v. U.S. Dist. Ct. for N. Dist. of Cal.*, 557 F.2d 650, 654–55 (9th Cir. 1977) (outlining "five specific guidelines" governing mandamus relief, the third of which is that the "district

---

[23] Reclamation also argues (essentially in the alternative) that the McCarran Amendment's waiver does not extend to the Bureau's defenses to KID's motion based on the reserved rights held in trust for the out-of-state Tribes. Reclamation Response at 27–37. Reclamation characterizes KID's claims implicating those defenses as "interstate disputes." *Id*. at 27.

The McCarran Amendment, however, is facially indifferent to the location or nature of federal interests with asserted "water rights" to an in-state "river system or other source" subject to a comprehensive state court adjudication. *See* 43 U.S.C. § 666(a). For that reason, the KBA order adjudicated water rights in Upper Klamath Lake as to federal properties in Oregon *and* California. *See above* notes 1, 15 and accompanying text, and 16.

court's order is clearly erroneous as a matter of law"); *In re Walsh*, 15 F.4th 1005, 1008 (9th Cir. 2021) (characterizing the third *Bauman* factor, clear error as a matter of law, as "a necessary condition for granting a writ of mandamus") (quoting *In re Van Dusen*, 654 F.3d 838, 841 (9th Cir. 2011)).

From that error, it also necessarily follows that KID has "no other adequate means," such as a direct appeal, to obtain the relief it seeks. *Cheney*, 542 U.S. at 380; *Bauman*, 557 F.2d at 654 (identifying this factor as the first mandamus consideration). Because the Klamath County Circuit Court has prior exclusive jurisdiction, no other forum can provide relief. Although an appeal in the ordinary course could eventually provide relief, it would be inadequate, because in the meantime KID's irrigator members would suffer loss of their water rights. *See* Pet. 86–100; Pet. 293–310. And apart from the injuries identified by KID's declarants described above, loss of opportunities to *use* water rights by its nature is akin to environmental injuries that we have characterized as irreparable. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (loss of opportunities to "view, experience, and utilize" undisturbed areas of a national forest was irreparable injury). KID's petition thereby satisfies *Bauman*'s second mandamus consideration: that "[t]he petitioner will be damaged or prejudiced in a way not correctable on appeal." 557 F.2d at 654.

KID has therefore shown its entitlement to mandamus relief under the first three factors of the *Bauman* balancing test. *See In re Williams-Sonoma, Inc.*, 947 F.3d 535, 538–40 (9th Cir. 2020) (granting writ of mandamus when first three *Bauman* factors were satisfied but fourth and fifth factors were not and explaining that "[t]he balance of the factors weighs in favor of granting the writ of mandamus"); *United*

*States v. Tillman*, 756 F.3d 1144, 1153 (9th Cir. 2014) (same); *Hernandez v. Tanninen*, 604 F.3d 1095, 1101–02 (9th Cir. 2010) (same, and noting that district court order was "particularly injurious" to petitioner's interests); *cf. Miller v. Gammie*, 335 F.3d 889, 895 (9th Cir. 2003) (en banc) (finding third factor dispositive where first two factors supported mandamus and last two did not).[24]

As "[n]ot every factor is needed for granting a writ of mandamus," *Walsh*, 15 F.4th at 1008, and "rarely if ever will a case arise where all the guidelines point in the same direction or even where each guideline is relevant or applicable," *Hernandez*, 604 F.3d at 1099, I would grant KID's petition based on its showing that the district court clearly erred as a matter of law and that KID has no other adequate remedy in view of the irreparable injury its irrigator members will suffer from the delay occasioned by an appeal in the ordinary course.

As the district court usurped the prior exclusive jurisdiction of the Klamath County Circuit Court to resolve *all* questions regarding the scope of the KBA order that KID seeks to enforce, including whether Reclamation forfeited the reserved rights of the Tribes by not asserting a claim on their behalf and whether the ESA preempts that order, this is a textbook case warranting mandamus relief. *Cf. Cheney*, 542 U.S. at 380 (mandamus is reserved for "exceptional circumstances amounting to a judicial usurpation of power") (cleaned up). I therefore respectfully dissent from the denial of the writ.

---

[24] The last two *Bauman* factors are "(4) [t]he district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules"; and "(5) [t]he district court's order raises new and important problems, or issues of law of first impression." 557 F.2d at 655.